IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE PRATER, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 14-3395 |
| | : | |
| JOHN E. WETZEL et al., | : | |
|     Defendants. | : | |

**Jones, II    J.**                                                             **May 27, 2015**

## MEMORANDUM

      This is a pro se civil rights action filed by Wayne Prater ("Plaintiff"), a state prisoner, against various personnel of the Pennsylvania Department of Corrections and SCI Graterford (collectively "the Defendants"), for damages under 42 U.S.C. § 1983. Plaintiff filed this case on June 27, 2014. (Dkt No. 4 [hereinafter Compl.]) On August 20, 2014, Defendants moved to dismiss. (Dkt No. 12 [hereinafter MTD].) On November 19, 2014, Plaintiff moved for leave to file an Amended Complaint. (Dkt No. 13.) On February 27, 2015, with the Court's approval, Plaintiff filed an Amended Complaint. (Dkt No. 18.) Upon review of Plaintiff's Amended Complaint, the Court held that the Amended Complaint stated claims that were wholly distinct from those alleged in the original Complaint. (Dkt No. 19.) The Court vacated the Amended Complaint, and reinstated Defendant's pending Motion to Dismiss the original Complaint. (Dkt No. 19.) Thereafter, Plaintiff filed a Response to Defendants' Motion to Dismiss the original Complaint. (Dkt No. 22 [hereinafter Pl. Resp.].) Defendant's Motion to Dismiss is now ripe for the Court's review.

      Upon review of Plaintiff's Complaint, Defendants' Motion to Dismiss, and Plaintiff's Response, the Court grants the Motion.

### I.    Standard of Review

      In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## II.    Background

### a.  The Facts

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips*, 515 F.3d at 233. At all times relevant to this case, Plaintiff was a prisoner of the state of Pennsylvania. (Compl. ¶ 3.) Plaintiff sued the following personnel from the Pennsylvania Department of Corrections and State Correctional Institution ("SCI") Graterford in their individual capacities:

- John E. Wetzel, Secretary of Corrections, (Compl. ¶ 4);
- Shirley M. Smeal, Executive Deputy Secretary of Corrections, (Compl. ¶ 5);
- George Ondrejka, Deputy Superintendent of SCI Graterford, (Compl. ¶ 7);
- J. Lane, PRC hearing officer at SCI Graterford, (Compl. ¶ 8);
- Robin M. Lewis, Chief Hearing Examiner of the Pennsylvania Department of Corrections, (Compl. ¶ 9);
- Defendant Fields, Major at SCI Graterford, (Compl. ¶ 10);
- Defendant Dohman, Major at SCI Graterford, (Compl. ¶ 11);
- D. Brumfield, Captain at SCI Graterford, (Compl. ¶ 12);
- G.S. Robinson, III, Lieutenant at SCI Graterford, (Compl. ¶ 16);
- M. Doyle, Lieutenant at SCI Graterford, (Compl. ¶ 15);
- Wendy Shaylor, Grievance Coordinator, SCI Graterford, (Compl. ¶ 13);
- Defendant Golden, Unit Manager at SCI Graterford, (Compl. ¶ 14);
- Defendant Smith, Correctional Officer at SCI Graterford, (Compl. ¶ 17).

On December 18, 2012, Plaintiff was housed at SCI Graterford in the E-B-Unit, Cell Number 062-1. (Compl. ¶ 20.) On that date, Plaintiff was written up by Jane/John Doe Officer

for "fraudulent" reasons. (Compl. ¶ 20.) Plaintiff was served with the write-up by Defendant Smith. (Compl. ¶ 20; Compl., Ex. A [hereinafter Write-Up].) Plaintiff was handed the write-up and told he was on twenty-four hour lock-down, but was not given a reason for either the write-up or the lock-down. (Compl. ¶ 20.)

The write-up charged Plaintiff under Commonwealth of Pennsylvania, Department of Corrections Policy Number "DC-ADM 802 Section IA #IC." (Write-Up.) The write-up is classified as an "Other" report, not a "Misconduct Report," a "DC-ADM 801," or an "Informal Resolution," report. (Write-Up.) The incident time is listed as "11:15" on "12/18/12." (Write-Up.) The write-up states that the misconduct charge is that the "Inmate is a danger to himself/herself or others." (Write-Up.) The staff member's version reads "Inmate KV1019 Prater is serving a sentence for a crime committed against a staff member." (Write-Up.) The "immediate action taken" was "802 misconduct." (Write-Up.) The section providing a date and time for a hearing was crossed out. (Write-Up.) The writing in the pre-hearing confinement section is difficult to read, but it appears to state "As pending review by PRC." (Write-Up.) The reporting staff member was "M. Doyle," and the reviewing, ranking C.O. on duty that signed that report was "Capt. D. Brumfield." (Write-Up.)

Section 1A of Policy Number DC-ADM 802 does not include a number "I" or "1" "c" and does not appear to apply here. DEPARTMENT OF CORRECTIONS, ADMINISTRATIVE CUSTODY PROCEDURES, POLICY NO. DC-ADM 802, § I-A (Nov. 24, 2014) [hereinafter DC-ADM 802] (section relates to prohibition against placing inmates at a high risk for sexual victimization involuntarily in administrative custody).[1] In contrast, Section 1C of Policy Number DC-ADM 802 appears more relevant. Section 1C addresses placement on a Restricted Release List, stating that an inmate may be placed on this list when "he/she poses a threat to the secure operation of the facility." DC-ADM 802 § 1C(1). Criteria for placing an inmate on the list includes, but is not limited to "assaultive history against staff." DC-ADM 802 § 1C(2).

Plaintiff was placed on twenty-four hour lock-down for eleven (11) days. (Compl. ¶ 21.) Being on lock-down meant that he did not have access to a law library, to lights, to a shower, or to any recreational opportunities. (Compl. ¶ 21.) Plaintiff did not receive a hearing either prior to nor during those eleven days. (Compl. ¶ 21.) While in lock-down, Plaintiff filed several

---

[1] The Court may consider public records for the purposes of ruling on a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

grievances on forms titled "Inmate's Request to Staff Member," as there were not "grievance forms" available in the lock-down unit. (Compl. ¶ 21.)

On the first day of his lock-down, just after receiving his write-up, Plaintiff sent a request form to Defendant Golden. (Compl. ¶ 22; Compl., Ex. B [hereinafter Dec. 18th Req.].) In this Request, Plaintiff wrote the following:

> This correspondence is in reference to this false write-up given on 12-18-12 ass[a]ult on staff member. I have on been in this facility for under 12 hrs. before [being] given a write up. I have no family or friends in this facility or any D.O.C. facility. I have never been in the D.O.C. data base in my life. The officer who gave [me a] write up never gave me any paperwork as in appeal, grievance, or any other paperwork but the false write up. I was never given a hearing or anything in reference to this write up. I've been in the Phila (PPS) institutions for three years without a write up. Now I come hear [*sic*] and get one. Something is very strange about this false write up!! Can you help me please get this problem rectified!! Also need access to law library.

(Dec. 18th Req.)

Plaintiff wrote another request to Defendant Fields on December 23, 2012. (Compl. ¶ 23; Compl., Ex. C [Dec. 23rd Req.].) The Request stated:

> Major Fields: This correspondence is in reference to this false write up given to me on 12-18-12, Write up No.: B369240. I sent a grievance to the Unit Manager Golden on 12-18-12 about this problem without a response. I've never commited [*sic*] any crime against any D.O.C. staff members as stated in the write up. The person I'm accused of a[n] allege[d] crime against Y. Mason never worked for the D.O.C., meaning that whatever D.O.C. Graterford staff member making this allegation is commiting [*sic*] perjury!! I have informed my attorneys of these crimes being commited [*sic*] against me and will be looking to file charges on all party's [*sic*] involved. I'm being denied my medication and not being allowed to get a shower. Major Fields, can you please help me with these major issues at hand before irreparable damage is done.

(Dec. 23rd Req.)

Plaintiff wrote another request on December 25, 2012, to Defendant Dohman. (Compl. ¶ 24; Compl., Ex. D [hereinafter Dec. 25th Req.].)

> This correspondence is in reference to the false write up given on 12-18-12…I've sent two other grievances in reference to this problem…without response….[A] crime that never happened is a crime in itself. I'm given a write up without any interaction with staff but the intake procedure. The staff member who alleged I committed a crime against them is commiting [*sic*] perjery [*sic*]!...[T]his is my first time in the D.O.C. Database…For a staff member to make a false write up is a crime that needs to be addressed by top administration. There is no evidence to verify these allegations that a crime was commited [*sic*]…The only person who came to ask questions…could give no answers an[d] stated "he knew the officer on the write up."

(Dec. 25th Req.)

4

On December 29, 2012, after eleven days on twenty-four hour lock-down, Defendant Brumfield ordered Plaintiff to be taken out of lock-down and placed in a new unit. (Compl. ¶ 25.) On January 4, 2013, Plaintiff filed a formal grievance and that grievance was denied by Lt. M. Doyle. (Compl. ¶ 30.)

On January 9, 2013, Plaintiff was given a Program Review Committee ("PRC") hearing. (Compl., Ex. E [hereinafter Hearing Verdict].) The PRC's Verdict states that the PRC included "G.S. Robinson, III, J. Lane, and G. Ondrejka." (Hearing Verdict.) At the hearing, Plaintiff told the PRC that he "had the proof to show that Jane/John Doe Officer made a fraudulent write up to harass and falsely imprison" him. (Compl. ¶ 26.) The PRC's Verdict was to have Plaintiff "Remain AC [in administrative confinement] pending transfer..." (Hearing Verdict.)

Plaintiff filed numerous appeals of all of his grievances to Defendant Lewis. (Compl. ¶ 32.)

Plaintiff also alleges that while in the RHU-Unit, Plaintiff was continually denied access to the law library and writing materials. (Compl. ¶ 27.) Plaintiff continuously made requests for access to the law library so that he could "file paperwork in his civil matter case no. 12-3979." (Compl. ¶ 27.) His inability to access the law library was the direct cause of that appeal being dismissed. (Compl. ¶ 27.)

### III. Discussion
#### a. Plaintiff has not alleged a First or Fourteenth Amendment access-to-courts claim.

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe*, 536 F.3d at 205 (citing *Lewis*, 518 U.S. at 354-55). The underlying claim "is an element that must be described in the complaint as though it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 404 (2002). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an actual injury – that they lost the chance to pursue a nonfrivolous or arguably underlying claim; and (2) that they have no other remedy that

may be awarded as recompense for the lost claim other than in the present denial of access suit. *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415); *see also Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013) (non-precedential) (holding that in an access-to-courts claim, Plaintiff must show actual injury caused by the violations).[2]

Plaintiff's lockdown interfered with a case that cannot support an access-to-courts claim. Plaintiff defines the underlying case as "civil matter case no. 12-3979." (Compl. ¶ 27.) In his Response to Defendants' Motion to Dismiss, Plaintiff explains that this is the case number on the case's appeal to the Third Circuit. (Pl. Resp. at 1.) In the underlying case, Plaintiff alleged that Philadelphia Police Officers violated his federal civil rights during his arrest. *Prater v. Philadelphia Police Department et al.*, Case No. 11-667 (E.D. Pa. 2011).[3] Following a jury trial, judgment was entered in favor of the Defendants. Plaintiff appealed to the Third Circuit, alleging two grounds for relief: (1) a *Batson* challenge and (2) juror misconduct. The Third Circuit dismissed his appeal for failure to order transcripts. *Prater v. City of Philadelphia et al.*, 539 F. App'x 35 (3d Cir. 2013). Plaintiff argues that he only failed to order transcripts because of his placement in administrative custody, including his time in lock-down.

---

[2] In his Response to Defendants' Motion to Dismiss, Plaintiff cites to three out of circuit Circuit opinions. These cases are not precedential. Moreover, these cases do not support Plaintiff's claims.
    In *John L. v. Abrams*, the Sixth Circuit held that Supreme Court case law to that point provided that right of access to the court "extended beyond habeas corpus petitions to civil rights actions." 969 F.2d 228, 232 (6th Cir. 1992). However, this case predates *Lewis*, 518 U.S. at 346. In *Lewis*, the Supreme Court expressly limited the scope of actions that could be the basis for access-to-courts claims to "challenges (direct or collateral) to their sentences and conditions of confinement." 518 U.S. at 354-55. Thus, the *John L.* panel's finding that access-to-courts protections apply to "civil rights actions" is both not precedential for this Court and expressly modified by the *Lewis* decision.
    *Vasquez v. Hernandez*, concerned a claim that police officers had conspired to cover-up facts of a shooting which had deprived plaintiffs of their ability to bring a civil claim against the perpetrators. 60 F.3d 325 (7th Cir. 1995). The panel found that plaintiffs had failed to allege a constitutional injury. *Id.* at 329. This case provides no guidance to the Court.
    In *Johnson v. Atkins*, a pro se plaintiff challenged the required filing fees, alleging that these fees prevented his access to the courts. 999 F.2d 99 (5th Cir. 1993). The panel found no underlying constitutional injury. *Id.* at 100-01. This case provides no guidance to the Court.
    In *Jackson v. Procunier*, the Court held that "[a]lthough *Bounds* did not discuss civil suits,…that opinion...[does not] undermine[] the previously recognized right of access to the courts in civil matters." 789 F.2d 307, 311 (5th Cir. 1986). Following *Jackson*, the Supreme Court in *Lewis* directly addressed what types of claims provide recognized rights of access to the courts and restricted it to "challenges (direct or collateral) to their sentences and conditions of confinement." 518 U.S. at 354-55.

[3] The Court may consider public records for the purposes of ruling on a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Access-to-courts rights preserve an inmate's ability to challenge, directly or collaterally, his sentence or to redress the conditions of his confinement. Inmates are not given "the wherewithal to transform themselves into litigating engines capable of filing everything…Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. "In other words, a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim." *Ball v. Hartman*, 396 F. App'x 823, 825 (3d Cir. 2010) (non-precedential) (quoting *Simmons v. Sacramento Cnty. Super. Ct.,* 318 F.3d 1156, 1160 (9th Cir. 2003)). The Court finds that as a prisoner, Plaintiff's right of access to the courts does not extend to the appeal of his unrelated civil rights case.[4]

Plaintiff's appeal was not a direct or collateral attack on his sentence, nor related to the terms of his confinement. The Court dismisses all claims against all Defendants related to Plaintiff's access to the courts.

### b. Plaintiff's First Amendment and Fourteenth Amendment claims related to Defendants' failure to give Plaintiff grievance forms and to respond to his grievances filed on "request to staff" forms are dismissed.

An inmate has a constitutional right to file a grievance. *Mestre v. Wagner*, 2012 WL 299626, at *5 (E.D. 2012) (citing *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir. 2003); *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006)). However, an inmate has no constitutional right to a particular grievance procedure. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam) (non-precedential) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases); *see also Pittman v. Corbett*, 2014 WL 783498, at *3 (E.D. Pa. 2014) ("[T]o the extent plaintiff's claims are based on the defendant's denials of grievances and/or inadequacies in and dissatisfaction with the grievance process, he has not stated a constitutional claim."); *Robinson v. Prison Health*

---

[4] The Court notes that *Lewis*'s narrow language of the types of cases covered by access-to-courts claims has been questioned in a non-precedential opinion by the Third Circuit. In a case involving Plaintiff, the Third Circuit held that although *Lewis* "limits the types of cases in which a prison must provide *affirmative* assistance, it does not give free reign to prison authorities to interfere with and impede a prisoner's pursuit of other legal action." *Prater*, 542 F. App'x at 138 (quoting *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) (emphasis in original)). However, in that case, Plaintiff was a pre-trial detainee. Here, Plaintiff was convicted and serving a sentence. The Court finds this distinction dispositive.

*Services, Inc.*, 2014 WL 2452132, at *7 (E.D. Pa. 2014) (dismissing Plaintiff's due process claims because claims based on dissatisfaction with the grievance process fail as inmate does not have a constitutionally protected right to a grievance procedure) (quoting *Powell v. Danberg*, 2011 WL 3438441, at *3 (D. Del. 2011)); *Robinson v. Varner*, 2012 WL 6628108, at *1 (E.D. Pa. 2012) ("[P]laintiff cannot state a constitutional claim based on his dissatisfaction with the grievance process."); *Bosold v. Warden, SCI-Somerset*, 2011 WL 6812902, at *6 (E.D. Pa. 2011).

To the extent that Plaintiff is alleging First Amendment and Fourteenth Amendment claims due to Defendants' failure to provide him with grievance forms, and various Defendants' failures to respond to his grievances as a form of process, such claims are dismissed.

### c. Plaintiff has not alleged a Fifth Amendment claim.

"[D]ue process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell*, 324 F. App'x at 189 (citing *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)); *see also Beahm v. Burke*, 982 F.Supp.2d 451, 458 (E.D. Pa. 2013). The Defendants are state employees, not federal officials. These claims are dismissed.

"The rights secured to individuals by the Fifth Amendment are generally applicable against states only through the Fourteenth Amendment." *Robinson v. Vaughn*, 1993 WL 451495, at *5 (E.D. Pa. 1993). Insofar as any of Plaintiff's allegations concern due process allegations, the Court addresses them in its Fourteenth Amendment analysis herein.

### d. Plaintiff's Sixth Amendment claims fail as the Sixth Amendment applies only to criminal prosecutions.

The Sixth Amendment applies only in the criminal setting. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (holding that the Sixth Amendment guarantees only apply to "criminal prosecutions"). "[T]he panoply of rights due a defendant in [criminal prosecutions] does not apply" in prison disciplinary proceedings. *Wolff*, 418 U.S. at 556. Thus, any Sixth Amendment claims are dismissed

8

### e. Plaintiff has failed to allege a violation of his Fourteenth Amendment due process rights.
#### i. As a preliminary matter, Plaintiff has exhausted his administrative remedies.

Although exhaustion is mandatory, a prisoner must only exhaust remedies that are "available." 42 U.S.C. § 1997e(a). An administrative remedy is unavailable when a prison official prevents a prisoner from pursuing the prison grievance process. *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003); *Brown v. Croak,* 312 F.3d 109, 113 (3d Cir. 2002). In this case, Plaintiff alleges that he was not able to file a formal grievance during his lock-down because he was not given the proper forms. (Compl. ¶ 21.) Despite not being given the proper forms, Plaintiff diligently pursued redress for the alleged wrongs of his confinement through "request to staff" forms. (Compl. ¶¶ 21-29.)

Moreover, once out of lock-down, Plaintiff filed a formal grievance regarding the eleven days that he had been placed on lock-down. (Compl. ¶ 30.) Plaintiff also filed numerous appeals after his grievances were denied. (Compl. ¶ 32.) The Court finds that Plaintiff has appropriately exhausted his administrative remedies.

#### ii. Plaintiff's placement in administrative custody does not constitute an "atypical and significant hardship," and thus he was not deprived of a liberty interest.

The Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Plaintiff's due process rights under the Fourteenth Amendment "are triggered by the deprivation of a legally cognizable liberty interest," which "occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Mitchell*, 318 F.3d at 531 (quoting *Sandin*, 515 U.S. at 484). "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected [parameters] of the sentence imposed by a court of law.'" *Id.* (quoting *Sandin*, 515 U.S. at 485).

"[P]lacement in administrative confinement will generally not create a liberty interest." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (quoting *Griffin v. Vaughn*, 112 F.3d 703,

9

706 (3d Cir. 1997)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Under *Sandin*, administrative or disciplinary custody[5] will only implicate a protectable liberty interest where it departs, in length of time or otherwise, from basic prison conditions. *Id.*

Courts in the Third Circuit have repeatedly held that periods of time less than three years in administrative custody do not impose undue hardship absent other conditions of the confinement that impose "atypical and significant" hardships. *See Smith*, 293 F.3d at 653 (holding that seven months in disciplinary custody was not deprivation of a cognizable liberty interest); *Griffin*, 112 F.3d at 708 (same, fifteen months); *Scerbo v. Lowe*, 326 F. App'x 652, 656 (3d Cir. 2009) (non-precedential) (same, six months); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (non-precedential) (same, 930 days); *see also Jackson v. Beard*, 2015 WL 1321721, at *12 (M.D. Pa. 2015) (same, 885 days); *Cessna v. Lewis*, 2015 WL 1299733, at *12 (M.D. Pa 2015) (same, 120 days); *Corbeil v. Cahill*, 2015 WL 268574, at *3 (M.D. Pa. 2015) (same, 100 days); *Coulston v. Glunt*, 2014 WL 808762, at *9 (W.D. Pa. 2014) (same, 30 days); *Davis v. Harlow*, 2013 WL 1195033, at *8 (W.D. Pa. 2013) (same, 60 days); *Hopkins v. Apadaca*, 2012 WL 1999539, at *8 (W.D. Pa. 2012) (same, 608 days); *Mearin v. Vidonish*, 2009 WL 5166258, at *4 (W.D. Pa. 2009) (same, 343 days and 254 days); *Israel v. Superintendent of S.C.I. Fayette*, 2009 WL 693248, at *5 (W.D. Pa. 2009) (same, roughly 480 days); *Abney v. Walker*, 2007 WL 1454265, at *3 (W.D. Pa. 2007) (same, 75 days); *Whittingham v. Vaughn*, 289 F.Supp.2d 621, 626 (E.D. Pa. 2003) (same, roughly 630 non-consecutive days); *Rauso v. Vaughn*, 2000 WL 873285, at *6 (E.D. Pa. 2000) ("Plaintiff's incarceration in the RHU and on cell restriction was within the expected parameters of his sentence and implicated no due process rights.").

Denial of recreational time and limitations on shower use are not "atypical" or "significant" hardships. *See Griffin*, 112 F.3d at 708-09 (finding administrative custody where

---

[5] The Supreme Court and the Third Circuit have noted that the conditions imposed on inmates in disciplinary custody mirror those conditions imposed on inmates in administrative segregation and protective custody "with insignificant exceptions." *See Sandin,* 515 U.S. at 486; *Mitchell,* 318 F.3d at 532. The Court notes that if there are any differences, those differences err in favor of administrative custody. In administrative custody, "conditions are even better than the conditions experienced in disciplinary custody." *Israel*, 2009 WL 693248, at *6. The Court will consider cases with both factual scenarios interchangeably for the standard of what is a cognizable liberty interest.

Plaintiff was limited to three showers per week and only one hour of recreation a day neither "atypical" nor "significant" hardships); *Jackson*, 2015 WL 1321721, at *12 (finding limitations on shower and recreation access did not rise to *Sandin* standard).

Plaintiff's relatively brief period of placement on "lock-down" and in administrative custody in the RHU does not rise to the level that it implicates a protectable liberty interest. The time alone cannot sustain the claim. Moreover, even the necessarily harsh conditions of twenty-four hour lock-down, with no recreation time, no law library time, and extremely limited shower access, are not "atypical and significant." Where Plaintiff is not deprived of a liberty interest, Plaintiff is not constitutionally entitled to process, in the form of hearings or otherwise, before or during his placement. *Nifas v. Coleman*, 2012 WL 707063, at *17 (W.D. Pa. 2012); *Mearin*, 2009 WL 5166258, at *4. Thus, Plaintiff's allegations do not support an entitlement to procedural due process protections with regard to his placement in administrative custody and "lock-down."

### iii. The filing of a false write-up does not implicate a protected due liberty interest.

"The filing of charges later proven to be false is not a constitutional violation so long as the inmate is provided with due process, unless the charges were filed in retaliation for the exercise of a constitutional right." *Flanagan v. Shively*, 783 F. Supp. 922, 931 (M.D. Pa. 1992) *aff'd* 980 F.2d 722 (3d Cir. 1992) (citing *Newsom v. Norris,* 888 F.2d 371, 377 (6th Cir. 1989); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)); *see also Israel*, 2009 WL 693248, at *6 ("[B]eing found guilty of a disciplinary charge for which the prisoner is actually innocent does not impose an atypical and significant hardship…"). "An allegation by an inmate that he was falsely accused, without more, fails to state a civil rights claim." *Id.* (citing *Hanrahan v. Lane,* 747 F.2d 1137 (7th Cir. 1984); *Wilson v. Maben,* 676 F.Supp. 581, 584 (M.D. Pa. 1987)); *see also Williams v. Klem*, 2008 WL 4453100, at *9 (M.D. Pa. 2008); *Hinterlong v. Hill*, 2006 WL 2303106, at *4 (E.D. Pa. 2006); *Bensinger v. Fanrack*, at 2001 WL 474423, at *4 (E.D. Pa. 2001). Simply put, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Clemens v. Lockett*,

2013 WL 6230648, at *5 (W.D. Pa. 2013) (quoting *Freeman*); *Davis*, 2013 WL 1195033, at *7 (same).

As a preliminary matter, the Court must assess whether Plaintiff was deprived of a protected liberty interest which would invoke the procedural due process protections of which he alleges he was denied. *See Clemens*, 2013 WL 6230648, at *6; *Davis*, 2013 WL 1195033, at *7. As previously addressed, Plaintiff's placement in administrative custody, including lock-down, for this amount of time and under these conditions did not deprive Plaintiff of a cognizable liberty interest. Thus, Plaintiff was due no due process.

**IV.    Conclusion**

Plaintiff has failed to state any underlying violation of his constitutional rights. Thus, all claims against all Defendants are dismissed.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. Darnell Jones, II    J.